# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM HANNAH, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HUNTINGTON NATIONAL BANK<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:18-cv-7564<br>)<br>) Hon. Judge Steven C. Seeger<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT MOTION FOR APPROVAL OF
## THE SETTLEMENT AGREEMENT AND RELEASE

| **ATTORNEYS FOR PLAINTIFF:** | **ATTORNEYS FOR DEFENDANT:** |
|---|---|
| James B. Zouras<br>Ryan F Stephan<br>Anna M. Ceragioli<br>STEPHAN ZOURAS, LLP<br>100 North Riverside Plaza<br>Suite 2150<br>Chicago, Illinois 60606<br>(312) 233-1550 | Brianna M. Skelly<br>David L. Weinstein<br><br>Rachel L. Schaller<br>Sukrat A. Baber<br>TAFT STETTINIUS & HOLLISTER, LLP<br>111 East Wacker Drive<br>Suite 2800<br>Chicago, IL 60601<br>(312) 836-4128 |

**INTRODUCTION**

Plaintiff WILLIAM HANNAH ("Representative Plaintiff"), individually and on behalf of four Opt-In Plaintiffs ("Opt-In Plaintiffs") (together with Representative Plaintiff, "Plaintiffs"), allege that Defendant THE HUNTINGTON NATIONAL BANK ("HNB" or "Defendant") deprived them and other mortgage loan officers ("MLOs") of minimum and overtime wages due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* Plaintiffs and Defendant (the "Parties") have agreed to settle all claims asserted by Plaintiffs pertaining to, arising from, or associated with their FLSA and IMWL claims.

The Parties, by and through their undersigned counsel, respectfully request that this Court enter an order approving the Parties' proposed settlement agreement because it represents a fair and reasonable resolution of the Parties' bona fide dispute and further state as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Procedural History**

On November 14, 2018, Representative Plaintiff William Hannah filed a Class and Collective Action Complaint in the above-captioned matter. (Dkt. No. 1.) Representative Plaintiff alleged that he and other non-exempt, hourly-paid MLOs were underpaid according to the overtime requirements of the FLSA and IMWL. Specifically, Representative Plaintiff alleged that Defendant violated the FLSA and IMWL by failing to compensate Plaintiffs for all hours worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207(a)(1); 820 ILCS 105/4a.

Representative Plaintiff sought to represent himself and similarly situated employees as a collective action under the FLSA and a class action under the IMWL and Federal Rule of Civil Procedure 23. On December 19, 2018, Dylan Hoffman opted into the lawsuit. [Dkt. No. 16]. On

April 17, 2019, Plaintiffs filed a motion to certify a collective action on behalf of all MLOs nationwide, alleging that Defendant had a policy or practice of refusing to pay overtime. [Dkt. No. 29]. Defendant opposed the motion and filed its own motion to dismiss any claims by any Opt-In plaintiffs who worked outside Illinois, arguing the Court lacks personal jurisdiction over claims by non-Illinois plaintiffs regarding conduct that took place outside Illinois. [Dkt. No. 21]. On May 21, 2020, the Court granted Plaintiffs motion to proceed as a collective action with respect to only those MLOs who worked at HNB's Downers Grove, Illinois branch and denied the motion with respect to employees working anywhere else. [Dkt. No. 75]. Accordingly, the Court denied Defendant's motion to dismiss any claims by Opt-In plaintiffs who worked outside Illinois as moot. [Dkt. No. 75].

On May 28, 2020, the Parties submitted a "Joint Status Report Updating the Court on Discussions Regarding Notice." [Dkt. No. 77]. The parties notified the Court of disagreements over the scope and method of notice – notably, a disagreement over whether notice should be sent to employees "who were employed as hourly paid mortgage loan officers at HNB's Downers Grove office" or employees "who were employed as hourly paid mortgage loan officers and who reported to Anna Marek at HNB's Downers Grove office." [Dkt. No. 77]. On June 16, 2020 the Court ordered that Notice be sent to potential Opt-In Plaintiffs, "including all [MLOs] who worked at the Downers Grove location, even if they reported to someone other than Anna Marek." [Dkt. No. 80]. Following the issuance of court-approved notice, three individuals opted into the lawsuit. Every Opt-In Plaintiff signed a consent form designating the Representative Plaintiff and Plaintiff's counsel as their agents to make all decisions concerning the Litigation, including the negotiation of settlement terms. [Dkt. Nos.16, 83, 84, 85].

Defendant denied and continues to deny any liability, wrongdoing, or legal violations of

2

any kind related to the claims and contentions asserted by Plaintiffs. Defendant maintained that all employees were and always have been properly compensated and that no overtime pay of any kind is owed to them. Defendant has also disputed that a class or collective action is appropriate. Nonetheless, Defendant agreed to settle the claims asserted in this lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

## B. <u>Discovery Completed</u>

Both parties have issued and completed written discovery. Plaintiff has taken the deposition of Defendant's managerial employees, Anna Marek and Adam Gunn, and Defendant has taken the depositions of Plaintiffs William Hannah and Dylan Hoffman. The Parties also participated in limited discovery for settlement purposes. Plaintiffs' counsel has conducted investigation and case analysis including: (a) interviews and other communications with Representative Plaintiff and the four (4) Opt-In Plaintiffs (b) review of payroll records identifying, among other items, dates of employment, hours recorded, and pay rates for Representative and Opt-In Plaintiffs; (c) intense data analysis to determine damages owed; and (d) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Declaration of Anna Ceragioli ¶ 6, attached as Exhibit A.

## C. <u>Settlement Negotiations</u>

Over the next few months, the Parties engaged in comprehensive settlement negotiations via phone and email correspondence. Exhibit A ¶ 7. The Parties ultimately reached an agreement on the settlement amount and the structure of the settlement. *Id.* Over the next few weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in the formal Settlement Agreement executed in full on December 1, 2020. *Id.* This settlement provides for

3

substantial monetary relief for the Representative Plaintiff and Opt-In Plaintiffs. *Id.* ¶ 8.

While the Representative Plaintiff believed his liability case was strong, he recognized that a complete victory on every aspect of his claims and the claims of the class and collective, including the measure of damages, was far from certain. The Parties also took into account the costs and risks associated with further litigation, and the benefits, certainties, and judicial economies associated with resolving a complex case before dispositive motion practice and possible trial. As a result, the Parties negotiated a global resolution of this dispute. *See* Exhibit B, Settlement Agreement and Release of Claims ("Settlement Agreement").

## II.     SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Plaintiffs and Defendant. Exhibit A ¶ 9.

### A.     The Settlement Amount

To avoid the time and expense of continued litigation, risks, and delays inherent in continuing the litigation, the Parties agreed to the Settlement Amount set forth in the attached Settlement Agreement. Ex. B ¶¶ 10h, 13. The Settlement Amount covers: (1) all attorneys' fees and costs in connection with Plaintiffs' counsel's representation of Plaintiffs and the Class Members, including all attorneys' fees and costs that may arise in the future in connection with the Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement; (2) all payments to Representative Plaintiff and Opt-In Plaintiffs; and (3) service payments to the Representative Plaintiff and Opt-In Plaintiff Dylan Hoffman ("Service Payments"). *Id.* Plaintiffs eligible to receive a settlement payment are Representative Plaintiff and the four Opt-In Plaintiffs: Dylan Hoffman, Joseph Rodriguez, Bradley Sears, and Elsa Toledo. Ex. B ¶¶ 10(l), 13.

B.     **Releases**

The Settlement Agreement provides that, upon entry of an order approving the settlement by the Court, the Representative Plaintiff and Opt-In Plaintiffs will agree to release all state and federal law claims for unpaid wages, unpaid overtime wages, untimely paid wages, claims related to wage payment, or other claims of any nature for wages, overtime wages, including any and all claims for damages, unpaid costs or expenses, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or based upon alleged violations of Illinois state wage laws or the FLSA. Settlement Agreement. ¶ 11.

C.     **Calculation and Distribution of the Settlement Amount**

Within twenty-one (21) business days following the Effective Date and receipt of required information from Plaintiffs, including completed W-4 and W-9 forms, Defendant shall distribute the Gross Settlement Amount. Ex. B ¶ 13. The distribution of the Gross Settlement Amount designated for Plaintiffs is based on employee payroll data produced by Defendant and is allocated to each Plaintiff based on individual calculations of each Plaintiffs' overtime damages, liquidated damages, and statutory interest. For each Plaintiff, their total damages were divided into two equal payments of: (1) one payment subject to reporting on IRS form W-2 and (2) one payment subject to reporting on IRS form 1099. Ex. B ¶ 13. The total settlement fund awards are allocated to each Plaintiff as follows:

1. William Hannah: $35,000.00
2. Dylan Hoffman: $7,000.00
3. Joseph Rodriguez: $13,900.00
4. Bradley Sears: $31,902.00
5. Elsa Toledo: $5,900.00

Ex. B ¶ 13.

**D.      Service Payment to Representative Plaintiff and Opt-In Plaintiff Hoffman**

The Gross Settlement Amount includes distribution of Service Payments to the Representative Plaintiff in the amount of $5,000 and to Opt-In Plaintiff Dylan Hoffman in the amount of $2,500 as payment for their efforts on behalf of the collective, including sitting for depositions, participating in discovery, and assisting Plaintiff's counsel with the prosecution of the lawsuit. Ex. B ¶ 13(e)-(f).

**E.      Attorneys' Fees and Litigation Costs**

The Parties negotiated and agreed to an award of attorneys' fees and costs in the gross amount of $80,000 for work performed in connection with this matter, in addition to $3,798 for reimbursement of reasonable out-of-pocket litigation costs expended. Ex. B ¶ 13(a)-(b). The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Plaintiffs' counsel, their hourly rates, the risks undertaken, and the results achieved.

The process of determining the proper fee award typically begins with the calculation of the "lodestar" figure – the product of the number of hours reasonably spent on the litigation and a reasonable hourly rate. *Eddleman v. Swichcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)). There is a "strong presumption" that the lodestar figure represents the "reasonable" fee to which a prevailing plaintiff is entitled. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010); *Eddleman*, 927 F.2d at 318. The standard to be applied is "whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *RKI, Inc. v. Grimes*, 233 F. Supp. 2d 1018, 1020 (N.D. Ill. 2002). "The district court has wide discretion in determining attorney's fees under the FLSA, and appellate review is thus limited to the highly deferential abuse of discretion standard." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d

702, 707 (7th Cir. 2001).

As of the date of this filing, Plaintiffs' attorneys and staff have spent 469.9 hours on this matter which, billed at their typical and customary rates, ranging from $200.00 to $725.00 per hour, provides a total lodestar of $188,937.50.[1] *See* Exhibit A at ¶ 15. Thus, the requested, unopposed $80,000 fee, if approved, would result in a "negative multiplier" of about 0.42. Significantly, courts in this circuit have held that, where a lodestar multiplier would be less than one, lodestar cross-checks are not necessary as the requested fee "easily withstands such analysis." *Will v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010). Defendant's lack of objection to Plaintiff's fees and Plaintiff's lodestar multiplier of less than 1 both support the reasonableness of Plaintiff's requested fees.

Relatedly, Plaintiffs' counsels' rates are reasonable given the contingency nature of its relationship with the Plaintiffs. Courts have found that:

> [C]ontingency of compensation . . . is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967); *see also McGuire v. Sullivan*, 873 F.2d 974, 979-80 (7th Cir. 1989). Therefore, the lodestar cross-check supports the reasonableness of Plaintiffs' requested attorney's fee.

### III. STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS

In the Seventh Circuit, settlements of FLSA claims must be approved by a Court of

---

[1] Plaintiffs' fee request does not include all time Plaintiffs' counsel spent in the week leading up to this filing and does not include any time Plaintiffs' counsel will spend after the date of this filing, including time spent filing this motion, any hearing on this motion, or completing any future legal and administrative tasks necessary to effectuate the settlement. Exhibit A at ¶ 17.

7

competent jurisdiction. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court must scrutinize the settlement for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When FLSA cases are settled on a collective basis, courts in this district have held that a one-step settlement approval process is appropriate. *See Bainter v. Akram Investments, LLC*, No. 17-cv-7064, 2018 WL 4943884, at *2 (N.D. Ill. Oct. 9, 2018); *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

**IV. APPROVAL OF THE SETTLEMENT IS WARRANTED.**

The settlement reached by the Parties represents a fair, just, and reasonable resolution of the claims alleged by Plaintiffs under the FLSA and any remaining disputes between the Parties. The agreement reached is the result of extensive negotiations between the Parties to resolve this matter. The settlement figures agreed upon bear a reasonable and fair relationship to the amounts

8

alleged by the Representative Plaintiff and Opt-In Plaintiffs, and also take into account the specific risks and uncertainties associated with this litigation. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients. Significantly, the Settlement Agreement provided for monetary relief for all Plaintiffs, including each of the four Plaintiffs who opted-in to the lawsuit.

### A. **Bona Fide Disputes Exist.**

The settlement of the instant action involves a *bona fide* dispute. Plaintiffs maintain that Defendant operates a policy and practice by which Defendant failed to make or maintain true and accurate records of the time worked by Plaintiffs over 40 hours per week, which resulted in Defendant's failure to pay Plaintiffs overtime for all hours worked, in violation of the FLSA and Illinois law. On liability, Plaintiffs would have to overcome Defendant's numerous legal and factual defenses, including, but not limited to the following:

1) Plaintiff's claims are barred, in whole or in part, by the Court's lack of personal jurisdiction over HNB as to the FLSA claims of non-Illinois MLOs;
2) Plaintiff's claims are barred, in whole or in part, by the applicable FLSA statute of limitations;
3) Defendant complied with all provisions of the FLSA and Illinois wage law at all times;
4) Plaintiff's claims are barred, in whole or in part, because he may not recover both prejudgment interest and liquidated damages under the FLSA.

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether the Representative Plaintiff and the Opt-In Plaintiffs could credibly establish the hours of overtime they worked and the weeks in which they worked overtime.

### B. **The Settlement Is Fair and Reasonable.**

In determining whether a settlement is fair and reasonable, courts have considered non-

exclusive factors such as: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

The Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation and the range of reasonableness of the settlement fund in light of the best possible recovery. *See* Ex. B ¶ 4.

Moreover, the settlement is appropriate at this stage of the proceedings. As set forth above, the Parties engaged in extensive discovery and litigation, which aided the parties in efficiently identifying and assessing the disputed legal and factual issues here. All parties engaged in a substantial investigation, which included remaining abreast of any changes in this ever-evolving and highly-nuanced area of the law. Plainly, the Parties had more than sufficient information to assess the risks of assessing liability and damages.

Additionally, the settlement is well within the range of possible recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages was uncertain. Even if a trier of fact ultimately found liability, a range of possible damages existed depending on factors including, but not limited to, the Parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of

10

limitations, and Defendant's knowledge, willfulness and good faith. Taking these considerations into mind, the amount of the settlement is appropriate in relation to the potential recovery and risks.

The settlement is based on the number of weeks worked by each individual Opt-In Plaintiff during the class period and accounts for all workweeks at issue. The amount includes an additional $2,500 service payment to Opt-In Plaintiff Dylan Hoffman and a $5,000 service payment to the Representative Plaintiff, who personally devoted considerable time and expense to the prosecution of the lawsuit, including but not limited to providing information during initial case investigation, sitting for depositions, providing declarations, and participating in written discovery.

Based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Parties, and not worth the costs and risks associated with a trial. As part of the Gross Settlement Amount, the Parties have agreed that Plaintiffs' counsel will receive $80,000 in attorneys' fees and $3,798 in recoverable costs, a sum Plaintiffs' counsel represents is consistent with the attorney-client agreement executed by the Representative Plaintiff. Defendant has no objection to the fees and costs. In sum, the Settlement Agreement constitutes a fair and reasonable settlement of all claims, consistent with abundant precedent, and the interests of judicial economy support approval of the Settlement Agreement.

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request an order: (1) approving the Settlement Agreement, and each of the four individual Plaintiff's Release of Claims, the payments to Plaintiffs, including the service payments to the Representative Plaintiff and Opt-In Plaintiff

11

Hoffman, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety with prejudice as to each of the four Opt-In Plaintiffs and the Representative Plaintiff; and (3) retaining limited jurisdiction only for the purpose of enforcing payment of the Gross Settlement Amount as set forth in the Settlement Agreement. *See* Proposed Approval Order and Final Judgment attached hereto as Exhibit C.

Dated: December 1, 2020   Respectfully Submitted,

*/s/ Anna M. Ceragioli*

Ryan F. Stephan
James B. Zouras
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550
(312) 233-1560 (fax)
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aceragioli@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ David L. Weinstein*

Brianna M. Skelly
David L. Weinstein

Rachel L. Schaller
Sukrat A. Baber
Taft Stettinius & Hollister, LLP
**TAFT STETTINIUS & HOLLISTER, LLP**
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000
(312) 527-4011 (fax)
bskelly@taftlaw.com
dweinstein@taftlaw.com
rschaller@taftlaw.com
sbaber@taftlaw.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

      I, the attorney, hereby certify that on December 1, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                                                  */s/ Anna M. Ceragioli*